HUDSON BUICK, PONTIAC, GMC
TRUCK COMPANY,
Appellant,

v.

Dean GOOCH and Kathy Gooch, individually, and Dean Gooch and Elaine Masterson as next friends for Jamie Gooch, Appellees.

Hudson Buick, Pontiac, GMC Truck
Company, Appellant,

v.

Edelle Newton Irwin, individually and as executor of the Estate of Mary Jeanette Cooper Irwin, Deceased, Appellees.

Nos. 12–98–00127–CV, 12–98–00128–CV.

Court of Appeals of Texas,
Tyler.

Sept. 30, 1999.

Rehearing Overruled Jan. 4, 2000.

Roger D. Higg, Wade Caven Crosnoe, Donald H. Flanary, Darrell M. Grams, Dallas, for Appellant.

Thomas H. Brown, Kilgore, for Appellees in No. 12–98–00127–CV.

John D. Sloan, Jr., R. Clement Dunn, Longview, for Appellees in No. 12–98–00128–CV.

Melissa A. Eason, Austin, Amicus Curiae National Assoc. Independent Insurers.

Ellen Heironimus, Austin, Amicus Curiae Texas Automobile Dealer Assoc.

Panel consisted of RAMEY, Jr., C.J., HADDEN, J., and WORTHEN, J.

JIM WORTHEN, Justice.

· Appellant Hudson Buick, Pontiac, GMC Truck Company, which is now known as Lively Buick, Pontiac, GMC Truck Company ("Hudson") appeals from a multimillion dollar personal injury judgment awarded to Appellees [1] as a result of injuries they sustained in a three-car automobile accident on May 30, 1994. Hudson was made a party to the suit because the 1981 Cadillac in which the Gooches were riding at the time of the accident had been obtained from Hudson earlier that day. When a vehicle struck the Cadillac from behind, it was propelled into the Irwins' lane causing them to collide head on with the Cadillac. Mary Jeanette Cooper Irwin was killed as a result of the collision. In eleven issues, Hudson asserts the trial court erred in its submission of certain jury questions and instructions, and that there was no or insufficient evidence to support the jury's determination of its liability and the amount of damages. We will reverse and render.

## I. Factual Background

A few months prior to the accident at issue, Newton Hudson ("Newton"), President of Hudson Buick, became acquainted with Don Shirley through an Al–Anon and Alcoholics Anonymous family support group they attended in Longview, Texas. Through their conversations, Shirley learned that Newton was in the car business, and he, in turn, informed Newton that he was an automobile wholesaler. Shirley then asked Newton whether he could purchase some vehicles through Hudson, and Newton said that he could do so. At trial, Newton explained that it was not unusual for Hudson to sell some of its

---

**1.** Damages were awarded to Dean Gooch, Kathy Gooch, Jamie Gooch, Edelle Newton Irwin, and the Estate of Mary Jeanette Cooper Irwin, collectively referred to herein as "Appellees."

less desirable used vehicles to other wholesalers or at car auctions.

Sometime after their conversation at AA, Shirley went to Hudson on two occasions prior to May 30, 1994, and purchased automobiles wholesale. On May 30, 1994, which was Memorial Day, Newton stated that he was the only person showing cars at Hudson. Sometime that day while Newton was occupied with other matters, Shirley arrived at Hudson and looked over a number of its used vehicles. Shirley thereafter informed Newton that he had found four vehicles he would like to purchase, and he would like a "package price" on the four. Newton gave Shirley a lump sum price on the four, Shirley made a counteroffer, and after some negotiations, the two ultimately settled upon a package price for the four vehicles.[2] Shirley then told Newton what portion of the total purchase price he wanted attributed to each of the four vehicles, and Newton placed those respective amounts on the sales contracts for each vehicle. Shirley represented to Newton that he was wholesaling these cars on behalf of Cars of Texas, a used car dealership in Longview. Shirley, however, told Newton that he had not planned to purchase four cars, and thus, only had several hundred dollars in cash with him at that time. Newton stated that because the banks were closed, he knew Shirley and his family and knew that they lived in town, he was not concerned about getting his money the next day. Thus, he agreed to give Shirley possession of the vehicles on Memorial Day and to allow him to pay for the vehicles the next day. Newton stated that the certificates of title would be turned over to Shirley after Hudson received payment for the vehicles. Before Shirley took possession of the vehicles, he and Newton signed a contract of sale reflecting the purchase price on each of the vehicles. Hudson then gave Shirley the keys to each of the four vehicles.

Shirley, assisted by his son and two other drivers, Dean and Jamie Gooch, drove the cars from Hudson Buick in Henderson to the Cars of Texas lot in Longview. With the exception of the Cadillac, all of the cars Shirley had obtained from Hudson were left on the lot at Cars of Texas. Shirley, however, used the Cadillac to transport himself and his three drivers back to Henderson. After returning to Henderson, as Shirley was stopped and preparing to make a left-hand turn off of the highway, a car driven by Doris Watkins struck the Cadillac from the rear knocking it into the path of a vehicle driven by Edelle Newton Irwin. The Gooches, Irwin, and his wife's estate thereafter sued Hudson and others for damages resulting from their injuries sustained in the accident. The jury found Hudson fifty-five percent negligent, Shirley thirty-seven percent negligent, and Watkins eight percent negligent, and it awarded Appellees damages of approximately $3,700,000.

## II. HUDSON'S FIRST AND SECOND ISSUES ON APPEAL: THE OWNERSHIP ISSUES

In its first issue, Hudson contends that the trial court erred in submitting to the jury an ownership question regarding the 1981 Cadillac, because the automobile's ownership was a question of law for the court to determine.[3] Hudson contends that as a result, the jury's answer to the question regarding ownership should be disregarded as immaterial. In its second issue, Hudson further contends that as a matter of law, it did not own the 1981 Cadillac at the time of the accident.

2. Shirley agreed to purchase the four vehicles for $3,750, and their purchase prices were set as follows: (1) a 1982 Oldsmobile Firenza for $800; (2) a 1985 Dodge Van for $1000; (3) a 1988 Dodge Shadow for $1,000; and (4) a 1981 Cadillac DeVille for $950.

3. Hudson timely objected to the submission of Question Number 3 at trial.

## A. Standard of Review for Charge Error

■ An appellate court reviews allegations of error in the jury charge under an abuse of discretion standard. TEX.R. CIV. P. 277; *Howell Crude Oil Co. v. Donna Refinery*, 928 S.W.2d 100, 110 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (the trial court has wide discretion in submitting jury questions as well as instructions and definitions); *European Crossroads' Shopping Ctr., Ltd. v. Criswell*, 910 S.W.2d 45, 54 (Tex.App.—Dallas 1995, writ denied). However, "review of a trial court's determination of the legal principles controlling its ruling is much less deferential," since "a trial court has no 'discretion' in determining what the law is or applying the law to the facts." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992) (orig.proceeding). Consequently, "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Id.* Furthermore, it is elementary that a trial court commits error if it submits a question of law to the jury. *Knutson v. Ripson*, 163 Tex. 312, 354 S.W.2d 575, 576 (1962). Absent a showing of extraneous prejudice, however, such error is harmless. *Medical Towers, Ltd. v. St. Luke's Episcopal Hosp.*, 750 S.W.2d 820, 826 (Tex.App.—Houston [14th Dist.] 1988, writ denied). Error in the jury charge is reversible if, viewed in the light of all of the circumstances, it amounts to such a denial of the rights of the complaining party as was probably calculated to cause and probably did cause the rendition of an improper judgment. TEX.R.APP. P. 44.1(a)(1). Absent a showing of extraneous prejudice, submission of a question of law to the jury is generally harmless since no harm results if it is answered as the trial court should have answered it, or it can be deemed immaterial and disregarded by the trial court if answered incorrectly. *Id.; see Spencer v. Eagle Star Ins. Co. of America*, 876 S.W.2d 154, 157 (Tex.1994).

## B. Was Ownership of the Cadillac a Question of Law?

■ In its charge to the jury, the trial court submitted the following ownership issue as Question Number 3: "At the time of the incident in question, did HUDSON BUICK PONTIAC GMC own the 1981 Cadillac automobile driven by DONALD SHIRLEY?" The jury's answer to that question was "yes." Hudson contends that this is a question of law, and it should not have been submitted to the jury. For the following reasons, we agree. First, it has been held that determination of the ownership of a vehicle is a conclusion of law based upon established facts. *Foust v. Old American County Mut. Fire Ins. Co.*, 977 S.W.2d 783, 787 (Tex.App.—Fort Worth 1998, no writ); *Alamo Cas. Co. v. William Reeves & Co.*, 258 S.W.2d 211, 214 (Tex.Civ.App.—Fort Worth 1953, no writ). As was noted by the court in *Alamo*, "[i]n a case where ownership, legal or equitable, sole or less than sole, is an issue between the parties, their statements as to ownership can constitute no more than an expression of their conclusions as to such." *Id.* Also, as Hudson points out, where as here, there is a question of the legal effect of the Certificate of Title Act on the transaction at issue, determination of the nature of the transaction between Hudson and Shirley is a question of law. *See Jarrin v. Sam White Oldsmobile Co.*, 929 S.W.2d 21, 24 (Tex.App.—Houston [1st Dist.] 1996, writ denied); *Smith v. Allstate Ins. Co.*, 467 F.2d 104, 106 (5th Cir.1972)(Question of automobile ownership may be both factual and legal requiring submission to jury of the factual issue, but where facts surrounding the transaction are uncontested, ownership issue is a legal question).

■ Appellees contend that there is a factual dispute regarding ownership of the 1981 Cadillac DeVille which should be resolved by the jury rather than the court as a matter of law. They cite *Dean v. Lowery*, 952 S.W.2d 637 (Tex.App.—Beaumont 1997, no writ) for this proposition. In *Lowery*, the appellate court determined

that the issue of ownership of a pickup truck remained unresolved when a bill of sale executed by a father was used to transfer ownership of the vehicle to his son. In a per curiam opinion, the Beaumont court explained that the use of the bill of sale to transfer title to the vehicle rather than a certificate of title was an attempt to obviate the Certificate of Title Act. It found that the affidavits of the buyer and seller were not proper summary judgment evidence to conclude that a valid sale had occurred, and there was a fact issue as to whether the buyer and seller were trying to obviate the purpose of the Certificate of Title Act. *Id.*

For the reasons set forth below, however, we conclude that *Lowery* is not controlling here. First, the cases are readily distinguishable on their facts. *Lowery* dealt with a father's attempt to transfer to his son ownership of a pickup truck that the father had purchased for his son's use two years earlier. Although the father executed a bill of sale to his son, financing for the pickup truck still remained in the father's name, and there was no evidence that the son had given consideration for the vehicle. In contrast, here, the undisputed facts surrounding the transaction show that Shirley and Newton, acting on behalf of Hudson, negotiated a sale price for four vehicles including the 1981 Cadillac, signed a contract of sale for each vehicle which reflected its purchase price, and Shirley then took possession of the vehicles and removed them from Hudson's lot with the understanding that their titles would be delivered to him the next day upon payment.[4] Further, in *Lowery*, the father executed a bill of sale; whereas, in this case, the sale of the vehicles was evidenced by one of four contracts of sale specifying the purchase price for each. Unlike a bill of sale which is unilateral in nature, each of these contracts bore signatures for both Hudson and Shirley. Finally, unlike *Lowery* where at the time of the

accident more than two months had passed without transfer of the certificate of title and without evidence that the father had intended to do so, here, the parties had agreed to transfer title upon payment the next day. The accident, however, occurred only a few hours after the contracts were executed and before the established time for transfer of the certificates of title. For these reasons, we do not find *Lowery* persuasive. There having been no facts in dispute regarding the transaction at issue, the ownership issue was a question of law, and the trial court erred in submitting it to the jury.

### C. Was Submission of the Ownership Issue to the Jury Harmful Error?

Having determined that the trial court erred in submitting the ownership issue to the jury, we must next determine whether such error was harmful, *i.e.*, viewed in the light of all of the circumstances, did the error amount to such a denial of the rights of Hudson as was probably calculated to cause and probably did cause the rendition of an improper judgment. TEX.R.APP. P. 44.1(a)(1). As noted above, the jury found that Hudson owned the 1981 Cadillac at the time of the accident. Thus, if that answer is legally incorrect, then the trial court was required to set aside the jury's answer to the question, and its failure to have done so will constitute reversible error since Hudson's liability turns upon the answer to that question.

Hudson contends that the Certificate of Title Act ("Act") does not apply to the ownership of the four automobiles and more specifically, to the 1981 Cadillac. It contends that ownership is controlled by Chapter 2 of the Texas Business and Commerce Code ("Code"). Appellees, on the other hand, assert that the Act must be considered in analyzing the facts of this

---

4. While not decisive of the ownership issue, the undisputed evidence also reflects that both Newton and Shirley intended and be-

lieved that their actions constituted a sale of the four vehicles and not any other type of transaction, *e.g.*, consignment.

case. We will thus examine both the Code and the Act.

■ Section 2.102 of the Texas Business and Commerce Code applies to transactions in goods. TEX. BUS. & COM.CODE ANN. § 2.102 (Vernon 1994). "Goods" are further defined in the Code as all things including "specially manufactured "goods" which are movable at the time of identification to the contract for sale ..." TEX. BUS. & COM.CODE ANN. § 2.105(a) (Vernon 1994). The broad definition of "goods" as defined in the Code includes motor vehicles. *Associates Discount Corp. v. Rattan Chevrolet, Inc.,* 462 S.W.2d 546, 549 (Tex. 1970). Under the Code, title to goods passes to the buyer when the seller completes physical delivery of the goods, even if a document of title is to be delivered at a different time and place. TEX. BUS. & COM. CODE ANN. § 2.401(b) (Vernon 1994).

Conversely, section 501.071(a) of the Act provides that "a motor vehicle may not be the subject of a subsequent sale unless the owner designated in the certificate of title transfers the certificate of title at the time of the sale." TEX. TRANSP. CODE ANN. § 501.071(a) (Vernon 1999). The Act further provides that "a sale made in violation of this chapter is void and title may not pass until the requirements of this chapter are satisfied." TEX. TRANSP. CODE ANN. § 501.073 (Vernon 1999).

Hudson contends that sections 501.071(a) and 501.073 of the Act stand in direct conflict with section 2.401(b) of the Code which allows for transfer of title to goods to the purchaser at the time and place that the seller physically delivers the goods, even when the document of title is to be delivered at a different time and place. Appellees counter this contention on the basis that Texas courts have reconciled the apparent conflict in language between the statutory schemes of the Code and the Act. Appellees cite four cases in support of their contention: *Gallas v. Car Biz, Inc.,* 914 S.W.2d 592, 594–95 (Tex. App.—Dallas 1995, writ denied); *Morey v. Page,* 802 S.W.2d 779, 783–84 (Tex.App.—

Dallas 1990, no writ); *Pfluger v. Colquitt,* 620 S.W.2d 739, 741–42 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.); and *Boswell v. Connell,* 556 S.W.2d 624, 626 (Tex.Civ. App.—Beaumont 1977, writ ref'd n.r.e.). These four cases, however, are distinguishable from the instant case since all four involve transfers made to a third person following the initial transaction between the seller and buyer, and do not, as here, involve the initial transaction between purported buyer and seller. We are thus persuaded that this line of authority cited by Appellees does not apply to the facts of the instant case.

■ Having found no merit in Appellees' suggested common law resolution of the conflict between the Code and Act present here, we next examine the purpose of the Act. The legislative intent behind enactment of the Certificate of Title Act was to "lessen and prevent theft of motor vehicles, traffic in stolen vehicles, and sale of encumbered vehicles without disclosure of existing liens." *Najarian v. David Taylor Cadillac,* 705 S.W.2d 809, 811 (Tex. App.—Houston [1st Dist.] 1986, no writ); *Pfluger,* 620 S.W.2d at 742. Its purpose was not to prevent sales and transfers of interests in motor vehicles, and the Act "does not prohibit or provide penalties for persons who have transferred interest in motor vehicles without compliance with the provisions thereof." *Najarian,* 705 S.W.2d at 811; *Tyler Car & Truck Ctr. v. Empire Fire & Marine Ins. Co.,* 2 S.W.3d 482, 485 (Tex.App.—Tyler 1999, no pet. h.). Moreover, as the court pointed out in *Rush v. Smitherman*: "The Certificate of Title Act was never intended to enlarge the tort liability of a seller, and we are convinced the common law imposes no such liability upon the naked title owner of vehicles." *Rush v. Smitherman,* 294 S.W.2d 873, 878 (Tex.Civ.App.—San Antonio 1956, writ ref'd). Thus, under Texas law, noncompliance with the Act does not override the clear showing of a valid and complete transfer of ownership of an automobile. *Najarian,* 705 S.W.2d at 811. Even in the

face of noncompliance, the sale of a vehicle without the transfer of a title certificate is valid "as between the parties, when the purposes of Certificate of Title Act are not defeated" despite the fact that the Act declares that the non-transfer of such certificates renders the sale void. *Id.; Smith v. Allstate Ins. Co.*, 467 F.2d at 107.

In recognition of the potential for this type of conflict, the Texas legislature has decided which statutory scheme applies in the event there is a conflict between the Code and the Act. Section 501.005 of the Act states: "Chapters 1–9, Business and Commerce Code, control over a conflicting provision of this chapter." Tex. Transp. Code Ann. § 501.005 (Vernon 1999). The legislative history behind the passage of this provision of the Act is instructive. In April of 1971, the supreme court issued the opinion of *Phil Phillips Ford, Inc. v. St. Paul Fire & Marine Ins. Co.*, 465 S.W.2d 933 (Tex. 1971). In that opinion, the court had held the Act's provisions requiring transfer of the certificate of title at the time of sale were not superseded by section 2.41 of the Code. *Id.* at 938. At that time, the Act did not provide that the Code controlled in the event of a conflict. Thereafter, in May of 1971, the legislature amended the Act to include section 65 which stated that the Code controlled if there was a conflict with the Act.[5] This amendment of the Act overruled the *Phil Phillips Ford* opinion and established that section 2.401(b) of the Code controls over the Act's provision that purports to void the sale of an automobile absent the transfer of the certificate of title. *See In re Bailey Pontiac, Inc.*, 139 B.R. 629, 633 n. 3 (N.D.Tex.1992).

Appellees next claim that the contract of sale was not dispositive that a sale of the four vehicles took place between Hudson and Shirley. In support of their position, they cite to the testimony of Gene Ballard, the owner of Cars of Texas,

where he testified that Shirley told him he had four cars on consignment. Ballard, however, did not seem to know what four cars it was that Shirley said he had on consignment and from what dealership he had obtained them. Moreover, under the parol evidence rule, this testimony is not probative. *Jackson v. Hernandez*, 155 Tex. 249, 285 S.W.2d 184 (1955); *Ross v. Stinnett*, 540 S.W.2d 493, 495 (Tex.Civ. App.—Tyler 1976, no writ). The parol evidence rule precludes consideration of extrinsic evidence to contradict, vary or add to the terms of an unambiguous written agreement, absent fraud, accident or mistake. *Id.* In construing the contract of sale, the trial court should ascertain the objective intent of the parties as expressed in the writing itself. *Pitman v. Lightfoot*, 937 S.W.2d 496, 517 (Tex.App.—San Antonio 1996, writ denied). In the instant case, the contracts of sale clearly reflect the intent of the parties. Moreover, since the parol evidence rule is one of substantive contract law and not merely a rule of evidence, when evidence is admitted in violation of the parol evidence rule, *e.g.*, the excerpts of Ballard's testimony urged by Appellees, it is incompetent and without any probative force. *Id.*

Based upon the record before us and our determination that the Code and not the Act governs interpretation of the transaction between Hudson and Shirley, we hold that Hudson transferred ownership of the 1981 Cadillac and three other vehicles to Shirley on May 30, 1994. Thus, Hudson was not the owner of the 1981 Cadillac at the time the accident in question occurred. Having so concluded, we hold that the jury's answer to Question Number 3 was incorrect. Moreover, because the trial court did not disregard the jury's answer to that question, harm to Hudson resulted since it caused rendition

---

**5.** Act of May 10, 1971, 62nd Leg., R.S., ch.123, 1971 Tex. Gen. Laws 895, 896 recodified as Tex. Transp. Code Ann. § 501.005 (Ver-

non 1999) by Acts 1995, 74th Leg., ch 165, § 1, eff. Sept. 1, 1995.

of an improper judgment. Accordingly, issues one and two are sustained.

### III. CONCLUSION

Because determination of ownership of the 1981 Cadillac is dispositive of this case, we need not address Hudson's remaining nine issues. Accordingly, we *reverse* the judgment of the court below, and *render* judgment that Appellees, Dean Gooch and Kathy Gooch, Individually, Dean Gooch and Elaine Masterson, as next friends for Jamie Gooch, and Edelle Newton Irwin, Individually and as Executor of the Estate of Mary Jeannette Cooper Irwin, take nothing against Appellant Hudson Buick, Pontiac, GMC Truck Company, which is now known as Lively Buick, Pontiac, GMC Truck Company.