Affirmed and Opinion filed May 23, 2002









Affirmed
and Opinion filed May 23, 2002.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-00-00760-CV

____________

 

WILBUR AND VILLAGE LANE LIMITED, Appellant

 

V.

 

CINEMARK CORPORATION and CINEMARK
U.S.A., INC., Appellees

 



 

On
Appeal from the 165th District Court 

Harris County, Texas

Trial
Court Cause No. 1997-37918

 



 

O P I N I O N








In a dispute involving a lease agreement for a movie theater,
the trial court granted a partial summary judgment in favor of appellant Wilbur
and Village Lane Limited (AWilbur@), the landlord, holding that appellees Cinemark Corporation
and Cinemark U.S.A., Inc. (collectively, ACinemark@), the tenant, breached the lease
agreement by withholding payment of disputed management fees and other
charges.  At trial, the jury found that
Cinemark=s failure to comply with the lease
agreement was excused by Wilbur=s prior breach of the lease agreement.  The trial court awarded attorney=s fees to Cinemark in accordance with
the parties= stipulation.  On appeal, Wilbur raises four issues:  (1) the evidence was factually insufficient
to support the jury=s finding in answer to question one that Cinemark=s failure to comply with the lease
agreement was excused; (2) the trial court erred in submitting question one to
the jury because it was a question of law; (3) the trial court erred in
awarding attorney=s fees only to Cinemark because Wilbur was also a prevailing
party; and (4) the trial court erred in failing to award Wilbur attorney=s fees as provided in the lease
agreement.  We affirm.

PROCEDURAL HISTORY

Cinemark filed suit against Wilbur alleging that Wilbur
breached the lease agreement by (1) failing to pay or credit to Cinemark monies
owed under the lease, and (2) indicating a present intent to terminate Cinemark=s right to continue operating the
movie theater.  Wilbur filed a
counterclaim alleging that Cinemark breached the lease agreement by failing to
pay its pro rata share of taxes, insurance, and common-area-maintenance expenses.  Cinemark entered a general denial and pleaded
the affirmative defense of excuse.

The parties filed cross-motions for summary judgment.  The trial court denied Cinemark=s motion for partial summary judgment
and Wilbur=s motion for summary judgment on
limitations, but granted in part Wilbur=s motion for partial summary
judgment, holding that Cinemark breached the lease agreement by withholding
monies owed under the lease agreement either as an offset or as a credit.  The issue of Cinemark=s defenses to Wilbur=s counterclaim and damages remained
to be determined at trial.

At trial, the jury verdict was in favor of Cinemark.  The jury found that Cinemark=s failure to comply with the lease
agreement was excused.  The parties
entered into a stipulation as to attorney=s fees, and the issue was not
presented to the jury for determination. 
Wilbur filed a motion for judgment notwithstanding the verdict and a
motion for new trial, which the trial court overruled.  

The trial court rendered judgment on the verdict for
Cinemark. 








BACKGROUND

In 1979, Northwest Village II, Ltd., as landlord, and
Cineplex Corporation, as tenant, entered into a written lease agreement for the
lease of space in a strip shopping center to be used as a movie theater.  In 1987, Cineplex assigned its interest in
the lease agreement to Cinemark, and Northwest II assigned its interest to
Wilbur.  Cinemark then began operating a
movie theater in the space.  As provided
in the lease agreement, Wilbur sent annual billing statements to Cinemark
reflecting a total balance due, including common-area-maintenance expenses, taxes,
and insurance.  

In 1990, Cinemark began to question what it believed were
improperly charged management fees included in the statements.  Wilbur responded that charging management
fees was permitted under section 2B of the lease agreement, entitled ACommon Facilities,@ which provided as follows:

The term Acommon facility expense@ shall include the following:  All liability insurance costs; all costs to
maintain, repair, replace, supervise and administer common areas, parking lots,
sidewalks, driveways and other areas used in common by the tenants or occupants
of the entire shopping center, which costs may include fees paid to a third
party in connection with same . . . .

Cinemark subsequently refused to pay the disputed management fees.  Wilbur sent a written notice of default and
demand for payment of the fees and other sums it contended were owed.  In the notice, Wilbur expressed its intent to
exercise its right to take possession of the premises and evict Cinemark if the
payment was not made within fifteen days. 
In a subsequent notice, Wilbur gave Cinemark four days to either cure
the deficiency or be locked out.  In
response, Cinemark vacated the premises and filed this suit.








ISSUES ON APPEAL

1.                 
Jury
Question One

Wilbur=s first two issues involve jury question one, and will be
addressed together.  Jury question one
asked the following:

You are instructed that one party=s failure to comply with an agreement is excused by
the other party=s previous failure to comply with a material
obligation of the same agreement.

Was
Cinemark=s failure to comply with the Lease
Agreement excused?

The jury answered the question Ayes.@ 
The only other jury question requested the amount of damages in the
event the jury answered question one in the negative.  Wilbur first contends that the evidence is
factually insufficient to support the jury=s answer, is against the great weight
and preponderance of the evidence, and is manifestly unjust.  In support of this issue, Wilbur argues that
(1) Cinemark=s predecessor, Cineplex, drafted the
lease and therefore the lease should have been construed against Cinemark, and
(2) the opinions of Wilbur=s expert witnesses, who testified that the management fees
were authorized under the lease agreement, were entitled to greater weight than
the opinions of Cinemark=s witnesses.  We find
these arguments without merit.

In reviewing a factual insufficiency point, we must review
the entire record, and will set aside the verdict only if it is so contrary to
the overwhelming weight of the evidence that it is clearly wrong and
unjust.  Cain v. Bain, 709 S.W.2d
175, 176 (Tex.1986).  We will not
summarily disregard evidence or substitute our opinion for that of the fact
finder.  Loftin v. Texas Brine Corp.,
720 S.W.2d 804, 805 (Tex. 1986).  The
jury, as fact finder, is the sole judge of the credibility of the witnesses and
the weight to be given their testimony.  Winfield
v. Renfro, 821 S.W.2d 640, 645 (Tex. App.CHouston [1st Dist.] 1991,
writ denied).  The jury is free to
believe or disbelieve all or any part of the testimony of any witness.  Miller v. Kendall, 804 S.W.2d 933, 939
(Tex. App.CHouston [1st Dist.] 1990,
no writ).








Wilbur=s argument that the lease agreement must be construed against
Cinemark is based upon the fact that it includes blank spaces in which the name
of the original landlord, Northwest Village II, Ltd., was either hand-written
or typed, while the name of the original tenant, Cineplex Corporation, was
already included.  Wilbur directs us to
no other evidence in support of its contention, nor does it direct us to any
testimony or findings to that effect. 
Further, Wilbur cites no authorities to support the argument that the
lease agreement should be construed against Cinemark, an assignee that did not
draft the agreement.

This contractual argument is that the language of section
2(B) of the lease agreement authorizes the landlord to charge the tenant for
the cost of a third party management company to supervise the common areas;
therefore, construing the lease against Cinemark, it was improper for the jury
to determine that Wilbur breached the lease agreement by charging improper
management fees.  Further, the opinions
of its witnesses that the management fees were authorized under the lease
agreement, taken together with the lease agreement (construed against Cinemark),
are entitled to greater weight than the opinions of Cinemark=s witnesses to the contrary.  Wilbur neglects to mention, however,
that  paragraph 40 of the lease agreement
specifically provides that A[i]n any such interpretation, construction or determination
of the meaning of any provision of this Lease, no presumption whatsoever shall
arise from the fact that the Lease was prepared by or on behalf of a particular
party hereto.@ 
Given this explicit prohibition on construing the lease against either
party, we decline to construe the lease as Wilbur urges.  Nevertheless, we will review the record to
determine whether the evidence is factually sufficient to uphold the jury=s verdict.








A central issue in Cinemark=s defense of excuse was whether the
management fee was authorized under the lease. 
If the fee was not authorized, then Wilbur was in breach of the lease,
thereby excusing Cinemark=s breach.  Wilbur
maintained that the management fee was authorized by section 2(B) of the lease
agreement because it authorized the landlord to charge a fee for supervision
and administration, including payments to third parties.  Cinemark contended that section 2(B) related
only to charges for the supervision and administration of common areas, not the
general management of the shopping center where the theater was located.  

The evidence presented at trial showed that, between 1987 and
1995, the management fee for the shopping center generally ranged between
approximately $36,000 and $43,000, and Cinemark paid about 10% of those
totals.  In 1990, Cinemark began to
question the management fee and asked for an explanation.  The management fee was subsequently moved on
the annual billing statement  from one
category to the ACommon Area Maintenance Expenses@ category, and a supervisory fee that
had previously appeared in that category was deleted without explanation.[1]  Cinemark continued to question the basis for
the fee, and after receiving no satisfactory explanation, eventually withheld
the disputed fee (and other charges it contested) from its lease payments.  

On April 9, 1997, Wilbur sent Cinemark a notice of default,
contending that Cinemark owed a total of $25,871.35, representing amounts owed
from 1992 through 1995, and noting that the amount owed for 1996 was still
being computed.  The notice further
informed Cinemark that if the default was not cured within 15 days, Wilbur
intended to repossess the premises and expel Cinemark.  In a subsequent letter dated July 14, 1997,
Wilbur informed Cinemark that it had four days to cure the deficiency or prepare
to be locked out.  Cinemark  did not pay the disputed amount, and moved
out of the premises by the deadline.








At trial, Cinemark first called Robert Hartsough, the
property manager for the shopping center where the theater was located, to
testify.  He testified that the
management fee was based on 4% of all rents collected in the shopping center,
and was paid to a management company owned by Wilbur=s general partner, Charles
Hamilton.  He conceded that the term Amanagement fee@ was not found anywhere in the lease
agreement, but contended that the Asupervise and administer@ language in section 2(b) authorized
the management fee.  

Hartsough testified that part of the management fees
collected were used to pay for his services as property manager.  His duties and responsibilities included
leasing the property, handling tenant complaints, and collecting rents.[2]  He admitted that acting as a leasing agent,
collecting rents, and accounting were not related to the maintenance of common
areas.  

Hartsough also testified that what a tenant is to pay under
the lease agreement is a material obligation of the contract, and it would not
be proper for the landlord to charge fees that were not authorized by the lease
agreement.  Further, if the tenant were
charged sums not authorized by the lease agreement, the tenant would be
entitled to a refund.  When asked what
portion of the management fee at issue was used for common area maintenance,
Hartsough admitted that the management fee was not the cost to supervise or
administer the work related to the common areas.








Charles Hamilton, Wilbur=s general partner, also testified
that the management fee was based on 4% of the rents collected.  He confirmed that part of the fee went to pay
Hartsough=s salary, and the remainder was paid
to Hamilton=s management company.  Like Hartsough, Hamilton agreed that whether
a management fee could be collected would be governed by the lease between the
landlord and the tenant.[3]  He also admitted that the term Amanagement fee@ did not appear in the lease
agreement, but testified that in his opinion section 2(B) of the lease
agreement permitted the management fee, because the Asupervise and administer@ language was synonymous with Amanagement.@ 
He also testified that he was entitled to charge the 4% management fee
based on an unwritten Aunderstanding@ between his management company and Wilbur.  However, he was unable to identify what part
of the management fee went to common area maintenance and what did not.  Instead, he maintained that the actual cost
to supervise and administer the common areas was the 4% fee.  Hamilton admitted that some of Hartsough=s duties were not related to common
area maintenance, but could not state what portion of his salary was related to
supervision of the common areas.[4]


Cinemark also presented the testimony of three current or
former Cinemark employees:  (1) Lori
Hoskins (formerly Lori Griffin), who first questioned the management fee in
1990; (2) Gay Nolan (formerly Gay Brooks), who succeeded to Hoskins= position in 1992 and continued
questioning the propriety of the management fees; and (3) Michael Cavalier,
Cinemark=s general counsel.  Hoskins testified that she began working in
the real estate department for Cinemark in August of 1988.  It was her job to compare bills received from
a landlord to the leases and determine whether the terms and conditions of the
lease provided for the billed amounts. 
She testified that she first raised questions about the management fees,
as well as other charges, on May 2, 1990, but Wilbur never responded to her
questions and continued to charge them. 
Hoskins also testified that she did not believe that management fees
were provided for in the lease agreement. 








Nolan testified that she assumed Hoskins= position in 1992.  She continued questioning the propriety of
the management fees, and had several conversations with Hartsough regarding the
matter.  She also prepared correspondence
to Hartsough requesting an explanation for the fees, and inquiring why the
supervision fee was deleted and the management fee was moved to the category of
common area maintenance.  She testified
that she was never provided with a satisfactory explanation.  She also testified that she attended a
meeting in Dallas that included Hartsough and representatives of Cinemark.  At the meeting, Hartsough was not able to
point to any provision of the lease that he believed authorized management
fees.  Nolan testified that she was left
with the impression that Hartsough did not believe that the management fees
were authorized under the lease.

Cinemark=s last witness was Michael Cavalier, its general
counsel.  Cavalier was presented as an
expert witness.  He testified that he was
an attorney licensed in Texas, and that he had practiced at a law firm in
Dallas prior to becoming Cinemark=s general counsel.  He testified that he had reviewed that lease
agreement, and in his opinion there was nothing in it that permitted the
charging of management fees or management fees based upon 4% of rents
collected.  He also testified that
Cinemark had no other theater in a shopping center that paid management
fees.  In Cavalier=s opinion, taking into account
overpayments and improper charges, Wilbur owed Cinemark $26,460.44 as of
1993.  Beginning in 1994, Cavalier began
calculating the legitimate charges on the annual billing statements and
deducting those charges from the credit balance Cinemark was owed based on his
calculation of the overpayments and improper charges of the  previous years.  He testified that as of April 9, 1997, the
date of Wilbur=s notice of default, no monies were
owed to Wilbur.  Further, Wilbur=s charging of fees not authorized
under the lease agreement was a breach of the agreement by Wilbur.








The only witness called during Wilbur=s case in chief was Joe Smith, who
was presented as an expert witness. 
Smith, a certified public accountant, testified that he had been
employed by Price Waterhouse & Company as a member of the audit staff for
three years, after which he worked at two smaller accounting firms before
starting his own company.  His company,
the Joe Smith Company, was primarily engaged in organizing and forming limited
partnerships.  Smith also purchased and
managed properties on behalf of the company. 
He testified that, in his opinion, the lease agreement provided for
management fees.  He stated that
management and supervisory fees were the same thing, and should not both be
charged.  He further testified that a
management fee based on 4% of the rents collected was appropriate.[5]  Smith also opined as to the damages Wilbur
was seeking.

On cross-examination, Smith confirmed that he did not write
an expert report and did not review the correspondence between the
parties.  He agreed that Cinemark would
be entitled to a credit if it had been charged a fee not authorized under the
lease, and would not be in default if it had paid all the monies owing under
the terms of the lease agreement.  He
also agreed that whether management fees should be charged should be specified
in the lease agreement, and that a landlord cannot arbitrarily charge fees not
authorized in the lease agreement.

Following Smith=s testimony, the evidence was
closed.  The parties put their
stipulation as to attorney=s fees on the record and made their objections to the charge
outside the presence of the jury.  The
trial court then read the charge to the jury, and the parties made their
closing arguments.  The jury subsequently
reached a unanimous verdict in favor of Cinemark.

Having reviewed the record in its entirety, both the evidence
supporting the jury=s finding and the evidence against it, we do not find that
the verdict is so contrary to the overwhelming weight of the evidence that it
is clearly wrong and unjust.  Further,
the jury was free to believe or disbelieve the testimony of the witnesses, and
we will not disturb their determination. 
We overrule Wilbur=s first issue.








In its second issue, Wilbur asserts that the trial court
erred by submitting question one to the jury because it is a question of law.[6]  Wilbur argues that in order to answer Ayes@ to the question, the jury had to
decide that Wilbur breached a material obligation of the lease agreement, and
in order to come to that conclusion, the jury had to determine that management
fees were not permitted under the lease agreement, which is a question of
law.  Wilbur=s entire argument, including the
restatement of the issue, appears on a single page of its brief, and in
substance consists of the following:

Whether
management fees were permitted by the Lease Agreement is a question of law to
be determined by the Court.  AIt is elementary that a trial court
commits error if it submits a question of law to the jury.@ 
Hudson Buick, Pontiac, GMC Truck v. Gooch, 7 S.W.3d 191, 195
(Tex. App.CTyler 1999 [pet. denied]).  Furthermore, issues of contract
interpretation are questions of law.  Memorial
Med. Ctr. v. Keszler, 943 S.W.2d 433, 434 (Tex. 1997) (per curiam).  Neither party pleaded ambiguity, and the
issue was not submitted to the jury. 
Thus, it is only necessary to look at the contract itself.  Therefore, it was improper to submit the
issue to the jury.

This argument is as misleading as it is deficient.  Wilbur relies on Hudson Buick for the
general proposition that it is error to submit a question of law to the jury,
but omits the court=s statement immediately following that general proposition in
which, quoting this Court, the Hudson Buick court explains:  A[a]bsent a showing of extraneous
prejudice, however, such error is harmless.@ 
Hudson Buick, 7 S.W.3d at 195 (citing Medical Towers, Ltd. v.
St. Luke=s Episcopal Hosp., 750 S.W.2d 820, 826 (Tex. App._Houston [14th Dist.] 1988, writ denied)).  Wilbur does not address the requirement that
extraneous prejudice must be shown, and, consequently, it makes no effort to
demonstrate extraneous prejudice.  Absent
a showing of extraneous prejudice, submission of a question of law to the jury
is generally harmless since no harm results if it is answered as the trial
court should have answered it, or it can be deemed immaterial and disregarded
by the trial court if answered incorrectly. 
Hudson Buick, 7 S.W.3d at 195; Medical Towers, 750 S.W.2d
at 826; see also Tex. R. App
44.1(a)(1) (error of law
not reversible unless it probably caused the rendition of an improper
judgment).  We cannot be an advocate for
either party.  Given Wilbur=s failure to adequately and
accurately brief this issue, we overrule it without further consideration.  See Tex.
R. App. P. 38.1(g).








Wilbur=s first and second issues are overruled.

2.                 
Attorney=s Fees

The trial court=s judgment reflects an award of
reasonable and necessary attorney=s fees to Cinemark as Athe prevailing party@ in the amount of A$100,000.00 for preparation and
trial, $15,000.00 in the event of a successful appeal to the Texas Court of
Appeal, and $7,500.00 in the event of a successful appeal to the Texas Supreme
Court.@ 
In its third issue, Wilbur contends that the trial court erred in
awarding attorney=s fees only to Cinemark because Wilbur was also a prevailing
party under Texas Civil Practice and Remedies Code section 38.001(8), having
obtained a summary judgment in its favor that Cinemark breached the lease
agreement by withholding disputed fees from its payments under the lease prior
to trial.  In its fourth issue, Wilbur
contends that it is also entitled to attorney=s fees based on the following
provision of the lease agreement:

In the event any action or proceeding
is brought by either party hereto against the other to enforce the terms,
covenants, and conditions of this Lease, the prevailing party shall be entitled
to recover the fees of its attorneys in such action or proceeding, including
costs of appeal, if any, in such amount as the Court may adjudge reasonable as
attorneys= fees.  In addition, should it be necessary for
Landlord to employ legal counsel to enforce any of the provisions herein
contained, Tenant agrees to pay all attorneys= fees and court costs reasonably
incurred.

Wilbur relies on the emphasized language, stating that it hired counsel
to seek enforcement of the terms of the lease agreement for payment of the sums
improperly withheld by Cinemark, and thus should be awarded attorney=s fees based on this provision of the
lease agreement.








Notably, Wilbur neglects to mention the parties= stipulation regarding attorney=s fees, which provided that the
prevailing party at trial would be entitled to reasonable and necessary
attorney=s fees of $100,000.00, plus
$15,000.00 for appeal to the court of appeals, and $7,500.00 for appeal to the
Texas supreme court.  The trial court=s judgment reflects that she awarded
attorney=s fees to the prevailing party in
accordance with the stipulation, based on the jury=s finding that Cinemark=s breach of the lease agreement was
excused because of Wilbur=s failure to comply with a material obligation of the same
agreement.  

The term Aprevailing party,@ for the purposes of awarding attorney=s fees, refers to a party who
successfully prosecutes an action or successfully defends against an action
on the main issue.  Emery Air Freight
Corp. v. General Transp. Sys., Inc., 933 S.W.2d 312, 316 (Tex. App.CHouston [14th Dist.] 1996,
no writ); F.D.I.C. v. Graham, 882 S.W.2d 890, 900 (Tex. App.CHouston [14th Dist.] 1994,
no writ) (emphasis added).  Wilbur=s argument that it was a prevailing
party because of the summary judgment it obtained prior to trial ignores the
ultimate outcome of the trial, which was that any breach on the part of
Cinemark was excused.  Liability under the
lease agreement was the main issue, and Cinemark prevailed on this issue.  Further, the parties= stipulation was that the stated
amount of attorney=s fees was to be awarded to the prevailing party Aat trial.@ 
Because we have affirmed the jury=s verdict, Cinemark is the prevailing
party at trial.  The trial court=s award of attorney=s fees as provided in the parties= stipulation was therefore proper. 

            With
regard to Wilbur=s fourth issue that it is entitled to attorney=s fees under the lease agreement,
Wilbur does not provide us with any authorities in support of its contention;
nor does it explain why the lease agreement should override the parties= stipulation.  Therefore, this issue is waived.  See Trenholm v. Ratchliff, 648 S.W.2d
927, 934 (Tex. 1983).[7]  Accordingly, Wilbur=s third and fourth issues are
overruled.








The judgment of the trial court is affirmed.

 

 

/s/        Wanda McKee Fowler

Justice

 

 

 

Judgment rendered
and Opinion filed May 23, 2002.

Panel consists of
Chief Justice Brister and Justices Fowler and Seymore.

Do Not Publish C Tex.
R. App. P. 47.3(b).

 











[1]  The
supervisory fee reflected on the billing statement for 1988 was $2,298.20, of
which Cinemark owed its pro rata share. 
It was undisputed at trial that Cinemark never questioned the payment of
a supervisory fee for common-area-maintenance. 
Further, Cinemark=s general counsel testified that when Cinemark began
deducting the disputed management fee from its lease payments, it included the
payment of a supervisory fee that was consistent with the supervisory fees that
had previously been charged, which it calculated to be 5% of the general
common-area-maintenance expenses.





[2]  Harsough and
Hamilton testified that Hartsough was paid separately for leasing properties.





[3]  Hamilton
admitted that other fees were improperly charged to Cinemark, including taxes
on freestanding buildings from 1987 through 1991, certain tenant improvement
costs, and personal property taxes. 
Hamilton contended that these charges were simply errors that he was not
aware of at the time they were billed. 
Hamilton also testified that the supervision fee charged prior to 1990
was deleted and the management fee moved to the common-area-maintenance
category of the billing statement to correct a billing error, and Cinemark=s questions regarding the management fee had nothing
to do with the changes in the billing statement.





[4]  Hamilton and
Hartsough both testified that they never tried to hide the management fees,
made no false representations to Cinemark, and did not try to conceal any
material facts from Cinemark.  Further,
Hamilton testified that, in his opinion, Wilbur was never in breach of the
lease.





[5]  Smith also
testified that he had paid management fees on his properties and passed them on
to tenants.  The management fees he paid
were paid to a company he owned.  





[6]  As noted
above, question one asked A[w]as Cinemark=s
failure to comply with the Lease Agreement excused?@





[7]  We note that
we do not construe the lease provision upon which Wilbur relies as permitting
the landlord to be entitled to attorney=s fees
for enforcement of a provision when the landlord breached the lease first.