**Affirmed and Memorandum Opinion filed April 30, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-11-00895-CV

**VERN CANNON, Appellant**

**V.**

**MBCI, A DIVISION OF NCI GROUP, INC., Appellee**

**On Appeal from the 269th District Court
Harris County, Texas
Trial Court Cause No. 2008-47714**

## M E M O R A N D U M   O P I N I O N

Appellant, Vern Cannon, appeals the trial court's judgment entered in favor of appellee, MBCI, A Division of NCI Group, Inc., on its claim that he breached a personal guarantee agreement. We affirm.

# I. BACKGROUND

MBCI manufactures products for constructing metal buildings for commercial, industrial, agricultural, and residential uses. Vern Cannon owns Cannon Storage Systems d/b/a Vern Cannon Company ("CSS"), which designs, engineers, fabricates, and constructs self-storage buildings in the United States and Canada. CSS executed a credit application on November 12, 2003.

CSS purchased products from MBCI for fifteen years on an open account. From May 9, 2008, through July 24, 2008, CSS ordered and received $431,141.93 of roofing and construction materials from MBCI. However, CSS failed to make any payments for the materials MBCI delivered during that period.

On August 8, 2008, MBCI sued CSS for failing to pay for the materials, bringing claims for suit on a sworn account, breach of contract, and quantum meruit. MBCI sued Cannon for failing to pay as guarantor of CSS's obligation.[1] After MBCI filed the lawsuit, CSS paid some of the unpaid invoices but still owed MBCI $360,884.46 at the time of trial.

CSS and Cannon brought counterclaims against MBCI for breach of contract, breach of warranties, business disparagement, fraud, negligent misrepresentation, DTPA violations, tortious interference, strict products liability, and negligent design, manufacturing, and marketing.[2] CSS alleged that MBCI represented that the "Ultra-Dek®" roof panels were weather-tight and would not leak, but the panels were defective due to MBCI's incorporation of defective

---

[1] MBCI also brought claims for business disparagement and slander against Cannon but later nonsuited those claims.

[2] Cannon nonsuited his individual claims against MBCI for breach of warranty and tortious interference with existing and prospective contracts. The trial court granted summary judgment on CSS and Cannon's counterclaims for breach of contract, strict products liability, and negligent design, manufacturing, and marketing against MBCI.

mastic into the panels, which resulted in the panels' leaking because they were not weather-tight.[3]

The case was tried to a jury. As to MBCI's breach of contract claim against CSS, the jury found: (1) CSS agreed to pay MBCI for supplies and materials provided by MBCI; (2) CSS failed to comply with the agreement; and (3) CSS's failure to comply with the agreement was not excused. As to MBCI's breach of guaranty claim against Cannon, the jury found: (1) MBCI and Cannon agreed that Cannon would guarantee payment by CSS; and (2) Cannon failed to comply with the agreement. The jury further found that the full amount owed to MBCI was $360,884.46.

The jury also found in favor of MBCI on CSS's counterclaims for fraud, DTPA violations, breach of express and implied warranties, negligent misrepresentation, business disparagement, and tortious interference with existing and prospective contracts.[4] The jury found reasonable attorney's fees for MBCI in the amount of $344,000 for representation in the trial court; $75,000 on appeal to the court of appeals; and $50,000 on appeal to the Texas Supreme Court.

The trial court entered judgment in accordance with the jury's findings in favor of MBCI against CSS and Cannon, jointly and severally. CSS and Cannon

---

[3] The trial court granted MBCI leave to designate Q'SO, Inc., the manufacturer of the mastic, as a responsible third party. CSS and Cannon filed a third-party petition against Q'SO, but those claims were later dismissed after the parties had settled.

Intervenors, who were owners and operators of self-storage businesses and contracted with CSS to build self-storage units on their properties, filed a petition in intervention against MBCI and Q'SO for DTPA violations, breach of implied warranty of merchantability, strict product liability, and negligent design, manufacturing, and marketing. The trial court granted summary judgment on all of Intervenors' claims against MBCI except for their breach-of-warranty DTPA claim. Intervenors' claims against Q'SO were dismissed after the parties had settled.

[4] The jury also found in favor of MBCI on Intervenors' claims for breach of implied warranty. Intervenors have not appealed the judgment.

appealed the trial court's judgment. CSS, however, filed a notice of withdrawal and amended notice of appeal, informing this court that it is no longer pursuing its appeal, thereby leaving Cannon as the only appellant in this appeal.

## II. ANALYSIS

In three issues, Cannon challenges the legal sufficiency of the evidence (1) supporting jury's verdict that he personally guaranteed the debt CSS owed to MBCI; (2) showing that he manifested an intention to guarantee CSS's obligation owed to MBCI; and (3) describing the obligation Cannon personally agreed to guarantee.

### A. Legal Sufficiency Standard of Review

In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable persons could, and disregarding contrary evidence unless reasonable persons could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). We may not sustain a legal sufficiency, or "no evidence," point unless the record demonstrates: (1) a complete absence of a vital fact; (2) the court is barred by the rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence to prove a vital fact is no more than a scintilla; or (4) the evidence established conclusively the opposite of the vital fact. *Id.* at 810.

### B. Evidence Regarding Personal Guarantee Agreement

Wayne Dickinson, the president and CEO of MBCI, testified that CSS had an open account with MBCI. An open account meant that CSS gave MBCI "a bill of material," and then MBCI shipped the material, generating an invoice, which CSS had a certain number of days to pay up to a credit limit. Dickinson identified Exhibit 5A as the credit application for CSS, reflecting CSS's open account with

4

MBCI. Dickinson further testified that Cannon gave a personal guarantee, which meant that, "if Cannon Self Storage doesn't pay the invoices that are due, Mr. Cannon personally would — would pay for them." Appearing at the bottom left-hand corner of the credit application were the words, "PERSONAL GUARANTEE" immediately followed by a paragraph indicating that the credit application included a guarantee agreement. Dickson further identified Exhibit 1 as the invoices totaling $360,884.46 that neither CSS nor Cannon had paid. Cannon confirmed that CSS had an open account with MBCI, identified his signature on the credit application, and admitted that neither he nor CSS had paid any of the invoices in Exhibit 1.

## C. Estoppel

Cannon complains that MBCI is estopped to rely on the credit application, Exhibit 5A, to support the existence of a personal guarantee because MBCI did not offer, and the trial court did not admit, the credit application as evidence of a personal guarantee.

During the testimony of Wayne Dickinson, MBCI's counsel moved to admit Exhibit 5, a copy of the credit application, into evidence. Cannon's lawyer objected that it was illegible, irrelevant, and not the best evidence. During a discussion at the bench, MBCI's counsel stated that the purpose of the credit application was "[t]o show that Mr. Cannon was buying product on open accounts, that he would buy products in advance of paying for them. That's it." The trial court stated that it would admit a clean copy of the credit application, Exhibit 5A, for the limited purpose of establishing "when Mr. Cannon may or may not have opened up an account with . . . MBCI." The trial court stated that the credit application was not admissible because it could not "read the terms and conditions or — to prove up what the terms of any contract or any business arrangement of

the two parties are." In open court, the trial court instructed the jury:

> The objection is sustained in part and overruled in part. Exhibit 5A will be admitted for the limited purpose as follows. And, ladies and gentlemen, you are to consider Exhibit 5A only as evidence as to when the defendants and MBCI may have established a business relationship on an open account. That's the sole purpose for which you are permitted to review that document.

MBCI's counsel offered Exhibit 5A into evidence during Cannon's testimony. Cannon's attorney objected based on the best evidence rule. During the bench conference that followed, MBCI's counsel stated that he was offering Exhibit 5A as evidence that Cannon had executed the credit application. The trial court stated that it was going let Exhibit 5A in for that additional limited purpose. The trial court then instructed the jury:

> 5A, ladies and gentlemen, is to be considered by the jury solely as evidence as to if and when the Cannon Storage Systems and/or Mr. Cannon established an open account with plaintiff, as well as evidence that Mr. Cannon executed that particular document, and not for any other purpose.

After MBCI rested, Cannon moved for a directed verdict on MBCI's breach of contract claim asserted against him individually arguing there was no evidence Cannon had "entered into a contract in his individual capacity with MBCI for the purchase of any of the materials at issue in this lawsuit." Cannon's attorney further argued that Exhibit 5A, which was admitted for limited purposes, was signed by Cannon in his capacity as president of CSS. The following discussion with the trial court then took place:

> THE COURT: All right. *There's also a guarantee clause at the bottom of that document, right?*
>
> MR. LAUGHERY [CANNON'S ATTORNEY]: Your Honor, it's illegible.
>
> THE COURT: All right. But I did admit it as evidence that

6

Mr. Cannon executed that document, right?

> MR. LAUGHERY: Yes, Your Honor.

> THE COURT: All right. What's your response?

> MR. WHITELEY [MBCI'S ATTORNEY]: Your Honor, in addition to 5A being admitted for that purpose that you just mentioned, Mr. Dickinson clearly testified that there was a guarantee and there was a contract for — between Cannon and MBCI for —

> \* \* \*

> MR. WHITELY: — that there was a contract between Cannon and MBCI for the purchase of panels.

> THE COURT: All right. The motion's denied.[5]

Moreover, during closing argument, MBCI's attorney stated: "Wayne Dickinson's testimony was clear that there was a personal guarantee from Mr. Cannon for his company. Also, Exhibit 5A, a credit agreement signed by Mr. Cannon, has a personal guarantee in it." Cannon did not object to this argument. Furthermore, in its response to Cannon's motion for JNOV, MBCI argued that the evidence was sufficient to support the jury's finding that Cannon had personally guaranteed CSS's payments to MBCI based on Exhibit 5A and Wayne Dickinson's testimony.

In support of his estoppel argument, Cannon relies on cases involving the invited error doctrine. *See Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 862 (Tex. 2005) (per curiam); *In re Mabray*, 355 S.W.3d 16, 32 (Tex. App.—Houston [1st Dist.] 2010, orig. proceeding [mand. denied]); *Horton v. Horton*, 335 S.W.3d 862, 865 (Tex. App.—Beaumont 2011, pet. denied). Under the invited error doctrine, a party cannot complain on appeal that the trial court took a specific action that the complaining party requested. *Tittizer*, 171 S.W.3d at 862. The invited error doctrine is inapplicable here because MBCI does not complain of the trial court's

---

[5] Emphasis added.

admitting Exhibit 5A for limited purposes.

In any event, Cannon has not established all the elements of estoppel. The elements of equitable estoppel arising from inconsistent positions taken in judicial proceedings are (1) a party takes a clearly inconsistent positions in the same or separate proceedings; (2) the position first asserted was successfully maintained or upheld; (3) the other party relied on the position first asserted; (4) adoption of the later position would result in injury or prejudice to the adverse party; and (5) where more than one action is involved, there is an identity of parties. *Glattly v. Air Starter Components, Inc.*, 332 S.W.3d 620, 639 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *In re Estate of Loveless*, 64 S.W.3d 564, 578 (Tex. App.—Texarkana 2001, no pet.). Cannon bears the burden of proving estoppel, and the failure to prove any one or more of the elements is fatal. *See Santa Fe Petroleum, L.L.C. v. Star Canyon Corp.*, 156 S.W.3d 630, 640 (Tex. App.—Tyler 2004, no pet.).

Cannon has not shown that MBCI took clearly inconsistent positions in the trial court. MBCI asked that Exhibit 5A be admitted for showing when CSS had established an open account with MBCI and that Cannon had executed the credit application. MBCI never argued to the trial court that Exhibit 5A was not evidence of a guarantee agreement, and the trial court even pointed out the guarantee agreement included in the credit application when it denied Cannon's motion for directed verdict. Thus, we conclude that Cannon's estoppel argument is without merit.

## D.  Statute of Frauds

Cannon contends that, because Exhibit 5A was not admitted into evidence in support of the personal guarantee claim, it cannot be considered as evidence of a personal guarantee. Therefore, according to Cannon, without evidence of the

8

written personal guarantee, it cannot be enforced without violating the statute of frauds.

Although Cannon asserted a number of affirmative defenses to MBCI's claims, he did not plead the statute of frauds. The statute of frauds is an affirmative defense to the enforcement of a contract which must be pleaded or it is waived. TEX. R. CIV. P. 94; *Swinehart v, Stubbeman, McRae, Sealy, Laughlin & Browder, Inc.*, 48 S.W.3d 865, 875 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). Because Cannon failed to plead the statute of frauds as an affirmative defense to the personal guarantee agreement, we conclude that Cannon has waived it. *See Adams v. H & H Meat Prods., Inc.*, 41 S.W.3d 762, 776 (Tex. App.—Corpus Christi 2001, no pet.) (holding the appellant waived the statute of frauds to enforcement of a personal guarantee).

### E. Parol Evidence Rule

Cannon contends that Wayne Dickinson's testimony cannot be used as evidence to support the existence of the personal guarantee because his testimony violates the parol evidence rule. Parol evidence may not be used to vary or contradict the express or implied terms of an unambiguous written agreement absent a showing of fraud, accident, or mutual mistake. *Toler v. Sanders*, 371 S.W.3d 477, 481 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *Hudson Buick, Pontiac, GMC Truck Co. v. Gooch*, 7 S.W.3d 191, 198 (Tex. App.—Tyler 1999, pet. denied). Evidence admitted in violation of the parol evidence rule is incompetent and without any probative force. *Johnson v. Driver*, 198 S.W.3d 359, 364 (Tex. App.—Tyler 2006, no pet.).

Dickinson's testimony merely confirmed the existence of the personal guarantee agreement. Cannon did not offer any evidence at trial to contradict Dickinson's testimony, and he does not contend that Dickinson's testimony

9

contradicted the terms of the guarantee agreement. We conclude that the parol evidence rule does not apply and, therefore, Cannon's argument is groundless.

## F. Elements of a Guarantee Agreement

Cannon contends that even if Dickinson's testimony were not subject to the parol evidence rule, it is not sufficiently detailed to establish all the elements of a personal guarantee claim. The essential elements of a guarantee agreement are (1) the parties involved, (2) a manifestation of intent to guarantee the obligation, and (3) a description of the obligation being guaranteed. *Material P'ships, Inc. v. Ventura*, 102 S.W.3d 252, 261 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

The evidence established the identities of the parties involved as Cannon, CSS, and MBCI. Both Dickinson and Cannon testified that CSS had an open account with MBCI. Cannon admitted that he signed the credit application. Dickinson testified that Cannon agreed to pay MBCI's invoices if CSS did not.

The evidence also established Cannon's manifestation of an intent to guarantee CSS's obligation to MBCI and the description of the obligation he guaranteed. Cannon admitted that he signed the credit application, which reflects CSS's open account with MBCI and contains the personal guarantee agreement. Moreover, Dickinson testified that under the personal guarantee agreement, Cannon would pay for the materials MBCI provided if CSS did not pay. We hold that the evidence is sufficient to (1) support the jury's finding that Cannon personally guaranteed CSS's debt owed to MBCI; (2) show that Cannon manifested an intention to guarantee CSS's obligation owed to MBCI; and (3) describe the obligation Cannon personally guaranteed. We overrule all of Cannon's issues.

10

Accordingly, we affirm the judgment of the trial court.

/s/    Sharon McCally
Justice

Panel consists of Justices Brown, Boyce, and McCally.