In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00014-CV


______________________________






IN RE: ALLAN HAGGERTY








 


Original Mandamus Proceeding









 
 



Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley








MEMORANDUM OPINION



 In his pro se petition for writ of mandamus and writ of prohibition, Allan Haggerty contends
that Gary Young, county and district attorney for Lamar County, should be disqualified from
prosecuting Haggerty since Young represented Haggerty on felony theft charges in 1994. (1) Haggerty
argues his recent conviction for felony driving while intoxicated (DWI) should be reversed and
remanded for a new trial. (2) In addition, Haggerty requests that we disqualify Young from prosecuting
Haggerty on a pending possession of a controlled substance charge. Haggerty alleges he and Young
discussed Haggerty's drug and alcohol consumption during Young's prior representation of Haggerty. 
According to Haggerty, one of the reasons Haggerty's trial counsel recommended that Haggerty not
testify during the felony DWI trial was that Haggerty may have revealed damaging confidential
information during Young's prior representation. In addition, Haggerty claims that Young could
benefit from the confidential information obtained during the prior representation in prosecuting
Haggerty on the pending charge of possession of a controlled substance.

 Under the facts alleged by Haggerty, a writ of prohibition is not available. Because
1) Haggerty requests relief not cognizable on a petition for writ of mandamus, 2) has failed to show
that the trial court has been requested to perform a ministerial act, and 3) has not provided a
sufficient record, we deny the petition for writ of mandamus.

I. A Writ of Prohibition Is Not Available

 A writ of prohibition normally directs a lower court to refrain from doing some act, usually
connected with interfering with the jurisdiction of the superior court. Tilton v. Marshall, 925 S.W.2d
672, 676 n.4 (Tex. 1996); In re Castle Tex. Prod. Ltd. P'ship, 189 S.W.3d 400, 403 (Tex.
App.--Tyler 2006, orig. proceeding); In re Alley, 1 S.W.3d 268, 269 (Tex. App.--Texarkana 1999,
orig. proceeding). The writ operates in a way similar to an injunction issued by a superior court to
control, limit, or prevent action in a court of inferior jurisdiction. Holloway v. Fifth Court of
Appeals, 767 S.W.2d 680, 682-83 (Tex. 1989); Tex. Capital Bank-Westwood v. Johnson, 864
S.W.2d 186, 187 (Tex. App.--Texarkana 1993, orig. proceeding). A party seeking a writ of
prohibition must show (1) there is no other adequate remedy at law and (2) he or she is clearly
entitled to the relief sought. Curry v. Wilson, 853 S.W.2d 40, 43-44 (Tex. Crim. App. 1993); In re
State, 180 S.W.3d 423, 425 (Tex. App.--Tyler 2005, orig. proceeding). 

 The writ of prohibition issues only to prevent the commission of a future act and should not
issue to correct an act which has been already fully performed. LeBlanc v. Gist, 603 S.W.2d 841,
843 (Tex. Crim. App. 1980); State, 180 S.W.3d at 425. Haggerty's request to issue a writ of
prohibition based on the felony DWI conviction seeks to correct an act already fully performed. 
Thus, a writ of prohibition is not available to remedy the felony DWI conviction currently on appeal.

 Although we may issue writs of prohibition to enforce our jurisdiction, courts of appeals do
not have general power to issue writs of prohibition. In re Yates, 193 S.W.3d 151, 152 (Tex.
App.--Houston [1st Dist.] 2006, orig. proceeding); see Tex. Gov't Code Ann. § 22.221 (Vernon
2004). A court of appeals does not have jurisdiction, absent "actual jurisdiction of a pending
proceeding" to issue a writ of prohibition. In re Nguyen, 155 S.W.3d 191, 194 (Tex. App.--Tyler
2003, orig. proceeding); see Yates, 193 S.W.3d at 152. Because we do not have actual jurisdiction
at the present over the possession charge which has yet to be tried, our jurisdiction is limited to
mandamus authority. See Nguyen, 155 S.W.3d at 194. We overrule Haggerty's request for a writ
of prohibition.

II. Haggerty Requests Relief Not Available

 Haggerty's petition requests relief which this Court lacks jurisdiction to grant. Haggerty's
petition requests relief against Young, the county and district attorney of Lamar County. This Court
lacks jurisdiction to issue a writ of mandamus against a county attorney or a district attorney. See
Tex. Gov't Code Ann. § 22.221. We note, though, that this Court does have jurisdiction to order
the trial court to enter an order disqualifying a district or county attorney. See In re Goodman,
No. 06-06-00102-CV, 2006 Tex. App. LEXIS 10815 (Tex. App.--Texarkana Dec. 21, 2006, orig.
proceeding). Even if we were to assume Haggerty intended to name the Honorable Scott McDowell,
presiding judge of the Sixth Judicial District of Texas, as respondent, Haggerty has still failed to
show he is entitled to relief, as discussed below.

 To the extent Haggerty requests this Court to order the trial court to retroactively disqualify
Young and order a new trial, this Court cannot grant such relief through a writ of mandamus.
Mandamus is an extreme remedy and will not be granted unless no other remedy at law exists. See
Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex. 1985). Because Haggerty's remedy,
if any, in connection with the offense for which he has been convicted is through direct appeal,
Haggerty would not be entitled to a writ of mandamus even if his petition did comply with Rule 52.3
of the Texas Rules of Appellate Procedure, which it does not. See In re Harrison, 187 S.W.3d 199,
200 (Tex. App.--Texarkana 2006, orig. proceeding); cf. Ex parte Richardson, 201 S.W.3d 712, 713
(Tex. Crim. App. 2006).

III. Haggerty Has Not Shown the Trial Court Has Been Presented With the Complained-Of
Issue


 To the extent Haggerty is requesting relief in the case currently pending against him,
Haggerty has not shown he is entitled to relief. To be entitled to mandamus relief in a criminal
matter, the relator must establish that (1) the act sought to be compelled is ministerial, and (2) there
is no adequate remedy at law. Dickens v. Court of Appeals for Second Supreme Judicial Dist. of
Tex., 727 S.W.2d 542, 548 (Tex. Crim. App. 1987). 

 Haggerty has not provided us with a record that shows that he has made any request of the
trial court to perform a nondiscretionary act. See Barnes v. State, 832 S.W.2d 424, 426 (Tex.
App.--Houston [1st Dist.] 1992, orig. proceeding). Haggerty alleges his trial counsel refused to
raise this issue. Even if Haggerty's petition could be construed as evidence that he has requested the
trial court to disqualify Young, (3) such a request would not be adequate. Haggerty acknowledges that
he is represented by counsel. Haggerty, who is represented by counsel, has no right to hybrid
representation. See Landers v. State, 550 S.W.2d 272, 280 (Tex. Crim. App. 1977) (op. on reh'g);
Reeves v. State, 46 S.W.3d 397, 400-01 (Tex. App.--Texarkana 2001, pet. dism'd). Once an
appellant has the assistance of counsel, the court is entitled to look solely to the attorney and is not
required to consider pro se motions. McKinny v. State, 76 S.W.3d 463, 478 (Tex. App.--Houston
[1st Dist.] 2002, no pet.). Because a trial court is not required to allow hybrid representation,
Haggerty has failed to show that the trial court has been presented with the issue of whether Young
is disqualified.

IV. The Record Is Insufficient

 It is the relator's burden to provide this Court with a sufficient record to establish his right
to mandamus relief. Walker v. Packer, 827 S.W.2d 833, 837 (Tex. 1992) (orig. proceeding); In re
Pilgrim's Pride Corp., 187 S.W.3d 197, 198-99 (Tex. App.--Texarkana 2006, orig. proceeding);
see Tex. R. App. P. 52.3(j)(1). In addition to the deficiencies discussed above, the petition fails to
comply with Rule 52.3 in numerous respects. See Tex. R. App. P. 52.3. 

 While the petition does contain an appendix, the appendix does not include "a certified or
sworn copy of any order complained of, or any other document showing the matter complained of."
See Tex. R. App. P. 52.3(d), (j)(1)(A). The petition also does not certify that a copy was served on
the respondent. See Tex. R. App. P. 9.5. 

 As we stated in Goodman, "[a] trial court may not disqualify a prosecutor on the basis of a
conflict of interest unless that conflict rises to the level of a due-process violation." Goodman, 2006
Tex. App. LEXIS 10815, at *3. We are unable to determine from the record provided whether these
requirements have been met. In Goodman, a hearing was held on the defendant's motion to recuse
and the defendant testified as to the information revealed to Young. Id. at *5. This Court held that
the potential conflict reached the level of a due-process violation. Id. In this case, the record is
insufficient to conclude that the trial court has been presented with evidence of a potential conflict
of interest that rises to the level of a due-process violation. To the extent Haggerty seeks prospective
relief, we also deny his petition for failure to comply with Rule 52.3.

V. Conclusion

 Haggerty has failed to show he is entitled to a writ of prohibition because a writ of
prohibition will not issue to correct a completed act and this Court can issue a writ of prohibition
only to enforce our jurisdiction. Further, Haggerty is not entitled to mandamus relief. This Court
cannot issue a writ of mandamus against a district or county attorney to disqualify him from
appearing in court. Even if we construed Haggerty's petition as requesting relief against the trial
court, Haggerty has failed to show that the trial court has been requested to perform a ministerial act
and he has not provided a sufficient record.

 For the reasons stated, we deny Haggerty's petition for writ of mandamus and petition for writ
of prohibition.



 Bailey C. Moseley

 Justice


Date Submitted: February 8, 2007

Date Decided: February 9, 2007
1. We note Haggerty has previously filed a petition for writ of mandamus with similar
arguments which were likewise denied. In re Haggerty, No. 06-06-00058-CV, 2006 Tex. App.
LEXIS 5021 (Tex. App.--Texarkana June 13, 2006, orig. proceeding). 
2. Haggerty's conviction for felony DWI is currently on appeal in this Court. See cause number
06-06-00022-CR.
3. We note that Haggerty's petition bears the signature of a notary public, but Haggerty fails
to certify that the facts alleged are true and correct. It is not necessary for us to decide whether the
petition can be considered as a record of the events which occurred in the trial court because, as
discussed below, the facts alleged are insufficient to entitle Haggerty to the requested relief, even if
true.



e interpreted by the court as a matter of law. DeWitt County Elec. Coop. v. Parks, 1 S.W.3d
96, 100 (Tex. 1999). On the other hand, a contract is ambiguous when it is susceptible to more than
one reasonable interpretation. Frost Nat'l Bank v. L & F Distribs., 165 S.W.3d 310, 312 (Tex.
2005). Lack of clarity does not create an ambiguity, and "not every difference in the interpretation
of a contract . . . amounts to ambiguity." Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 134 (Tex.
1994). Whether a contract is ambiguous is a question of law, subject to de novo review. Bowden v.
Phillips Petroleum Co., 247 S.W.3d 690, 705 (Tex. 2008); Heritage Res., Inc. v. Nationsbank, 939
S.W.2d 118, 121 (Tex. 1996).

 Here, the trial court made no attempt to explicitly resolve the question of whether the contract
was ambiguous. Before trial, the court granted the Hickses' motion in limine concerning the issue
of the admission of extrinsic or parole evidence or statements regarding the "parties' intentions
admitted so as to vary or contradict or which tend to vary or contradict the terms of the parties'
contractual agreements that are the subject of this cause." Further, throughout the trial, the trial court
sustained objections to attempts to interpret the contract on eight different occasions. However, the
trial court then found that the Hickses had "opened the door" and thereafter allowed testimony (to
a certain extent) regarding interpretation of the agreement.

 In the circumstance that a trial court fails to make the determination whether ambiguity in
a contract exists, this Court may determine ambiguity as a matter of law for the first time on appeal. 
Royal Maccabees Life Ins. Co. v. James, 146 S.W.3d 340, 347 (Tex. 2004). It is also likely that the
trial court, by sending the interpretation of the contract to the jury, implicitly held that the contract
was ambiguous. See Thomas v. Long, 207 S.W.3d 334, 339-40 (Tex. 2006) (holding court of
appeals was correct to consider appeal of trial court's implicit ruling). Assuming the trial court did
make an implicit finding of ambiguity, on de novo review, this Court may redetermine that issue. 
See Quick v. City of Austin, 7 S.W.3d 109, 116 (Tex. 1998). 

 Pilgrim claims that the agreement is ambiguous and that the trial court was therefore correct
in having submitted the issue of breach to the jury. (6) Pilgrim points to two separate areas of claimed
ambiguity. First, Pilgrim claims that paragraph 2.4 of the 2002 Agreement is ambiguous. Paragraph
2.4 provides:

 For and in consideration of the mutual covenants recited herein, HICKS, their agents,
assigns, and/or legal representatives, release and forever discharge PILGRIM, their
agents, employees, officers, directors, shareholders, successor entities, subsidiaries,
parent corporations, sister corporations, or related entities, and/or legal
representatives of and from any claims, liabilities, damages or consequences related
to the Permit application, the Settlement Agreement, and subject to the conditions set
forth below, the operation of the facility prior to the signing of this Compromise and
Settlement Agreement. The release of liability for operation of the Facility is subject
to and contingent upon PILGRIM implementing all corrective actions required by the
Settlement Agreement, and HICKS receiving the report and certification for each
corrective action program pursuant to Section 2.9 of this Compromise and Settlement
Agreement certifying that the goal of the corrective action program as described in
the Settlement Agreement has been achieved and that the environmental impacts to
the HICKS property from PILGRIM'S operation have been fully addressed and
corrected pursuant to all applicable environmental laws, regulations, standards and
criteria of the State of Texas.


 While paragraph 2.4 does not specifically state that the Hickses could not thereafter complain
about events that occurred on the Strube Egg Farm prior to the signing of the 2002 Agreement,
Pilgrim insists that paragraph 2.4 should be interpreted to include that prohibition. This paragraph
contains general release language regularly found in settlement agreements. It does not support
Pilgrim's assertion that the Hickses could never again complain about events occurring at the Strube
facility before August 6, 2002. Paragraph 2.4 plainly and unambiguously states that the Hickses
release all (1) claims; (2) liabilities; and (3) damages or consequences related to the permit
application, the 2001 Agreement and the operation of the facility prior to signing the 2002
Agreement. A general, categorical release clause must be construed narrowly. Boales v. Brighten
Builders, Inc., 29 S.W.3d 159, 167 (Tex. App.--Houston [14th Dist.] 2000, pet. denied). Moreover,
because  this  language  can  be  given  a  certain  and  definite  meaning,  it  is  not  ambiguous. 
Parks, 1 S.W.3d at 100.

 Pilgrim's second area of claimed ambiguity is based on the premise that the declaratory
judgment action actually involved two separate contracts. Pilgrim relies on Progressive County
Mutual Insurance Co. v. Kelley, 284 S.W.3d 805 (Tex. 2009), in support of this proposition. In that
case, Progressive insured five vehicles for the Kelley family. Four vehicles were listed on a two-page document, and the fifth was listed on a separate two-page document. However, the two
documents had separate policy numbers. Id. at 806. When Kelley was injured in an automobile
accident, Progressive paid the policy limits. Kelley then made a claim under an alleged second
policy to recover additional funds. Id. While the two documents had separate policy numbers,
Progressive denied there was a second policy and refused to make any additional payments. The
court determined that, given the existence of two documents, there was a latent ambiguity as to the
intent of the parties, i.e., whether there was one or two insurance policies. Id. at 807. 

 This case can be distinguished from Kelley because here, the 2001 Agreement was expressly
incorporated into the 2002 Agreement. (7) Although the 2002 Agreement superseded the 2001
Agreement, it specifically incorporated its terms and provisions. Thus, this case centers only on the
2002 Agreement. (8) This case is further distinguished from Kelley because the latent ambiguity in
Kelley had to do with the very issue of whether there was one or two policies. The resolution of that
issue was outcome-determinative. The ambiguity was identified, and the jury simply was charged
to decide which interpretation was correct, in light of the parties' intent. Here, there is no such
outcome-determinative factor based on the question of whether there are one or two agreements. 
Moreover, having relied on Kelley for the proposition that latent ambiguity exists in this case,
Pilgrim fails to articulate what that ambiguity might be, and how it arises as a result of two separate
agreements. Pilgrim simply argues that the 2001 Agreement and the 2002 Agreement were
susceptible to more than one reasonable interpretation, as demonstrated by the varying interpretations
testified to by the witnesses at trial. (9) Pilgrim fails to point to any specific language in the agreement
about which the meaning is subject to two different, reasonable interpretations; nor does Pilgrim
point to any specific trial testimony highlighting any part of the agreement alleged to be ambiguous. (10) 
Because the language of the agreement can be given a certain and definite meaning, it is not
ambiguous. Accordingly, the trial court erred in delegating to the jury the role of interpreting the
agreement. See Parks, 1 S.W.3d at 100.

 B. The Trial Court Erred in Failing to Rule as a Matter of Law on the Issue of
Breach by the Hickses


 Having determined the agreement to be unambiguous, we turn to the issue of whether the
court should have properly decided whether the Hickses' conduct amounted to a breach of the
agreement. Courts have consistently held that in the event there is an unambiguous contract and
there is no dispute as to the facts that may constitute a breach, it is error to submit the case to the
jury. Sullivan v. Barnett, 471 S.W.2d 39, 44 (Tex. 1971); Indian Beach Prop. Owners' Ass'n v.
Linden, 222 S.W.3d 682, 705 (Tex. App.--Houston [1st Dist.] 2007, no pet.). Only when there are
disputed issues concerning the facts of breach should the question be submitted to a jury. Briargrove
Shopping Ctr. v. Vilar, 647 S.W.2d 329, 333 (Tex. App.--Houston [1st Dist.] 1982, no writ). When
the evidence is undisputed regarding a person's conduct under a contract, the court must determine
whether such conduct amounts to a breach of that contract. Lafarge Corp. v. Wolff, 977 S.W.2d
181, 186 (Tex. App.--Austin 1998, pet. denied); Meek v. Bishop, 919 S.W.2d 805, 808 (Tex.
App.--Houston [14th Dist.] 1996, writ denied) (court determines what conduct is required by 
parties, and, insofar as a dispute exists concerning failure of a party to perform the contract, court
submits disputed fact question to jury).

 In the case at bar, Pilgrim claims three instances of breach by the Hickses. The conduct on
the part of the Hickses claimed by Pilgrim to have amounted to breach was the drafting and mailing
of two letters and one legal document. (11) There is no evidence in the record of any dispute regarding
the identity of the party who drafted these documents, what the contents of the documents were, or
whether the documents were, in fact, transmitted by the Hickses. The only dispute regarding these
documents was whether any of them constitute a breach of the agreement. Other than these three
documents, Pilgrim alleges no other instances of breach by the Hickses. This is a classic illustration
of the total lack of dispute as to the facts that are claimed to constitute a breach. In such a situation,
it is error to submit the issue of breach to the jury. Lafarge Corp., 977 S.W.2d at 186. The issue of
the Hickses' breach was a question for the trial court to decide as a matter of law. Id.

 C. No Evidence to Support Jury Finding of Breach by the Hickses


 A trial court commits error if it submits a question of law to the jury, as was done here. See
Knutson v. Ripson, 163 Tex. 312, 354 S.W.2d 575, 576 (1962); Hudson Buick, Pontiac, GMC Truck
Co. v. Gooch, 7 S.W.3d 191, 195 (Tex. App.--Tyler 1999, pet. denied). Absent a showing of
extraneous prejudice, however, submission of a question of law to the jury is generally harmless
since no harm results if the question is answered as the trial court should have answered it, or it can
be deemed immaterial and disregarded by the trial court if answered incorrectly. Tex. R. App. P.
44.1(a)(1); Spencer v. Eagle Star Ins. Co., 876 S.W.2d 154, 157 (Tex. 1994). Extraneous prejudice
exists when the answer given by the jury is incorrect as a matter of law. 

 The question, then, is whether the jury answered the question as the trial court would have
been required to answer it. Linden, 222 S.W.3d at 705; Gooch, 7 S.W.3d at 195. This effectively
requires a review of the jury's answer under a legal sufficiency or no-evidence standard. See
Universal Health Servs., 121 S.W.3d 742. If there is no evidence to support the jury's answer, the
trial court could not have ruled as the jury did. In conducting a no-evidence or legal sufficiency
review, this Court applies the traditional no-evidence standard. Evidence is legally insufficient only
when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law
or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence
offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence establishes
conclusively the opposite of the vital fact. City of Keller v. Wilson, 168 S.W.3d 802, 810 (Tex.
2005); Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998).

 Pilgrim claims the Hickses breached the agreement when they filed the motion to overturn
with the TCEQ on September 25, 2003, (12) and further alleges that the Hickses relied on a litany of
actions by Pilgrim that occurred before the execution of the 2002 Agreement in an effort to convince
the TCEQ that Pilgrim's registration for the Strube facility should be revoked. Pilgrim points to a
list of ten bulleted facts complained of in the motion, six of which occurred before August 6, 2002. 
The six complaints of pre-existing matters are specifically said to be the agents of alleged breach,
as they are claimed to be conduct in direct violation of the Hickses' obligations under paragraph 2.4
of the agreement. 

 As previously discussed, paragraph 2.4 clearly and unambiguously required the Hickses to
release all claims against Pilgrim as of August 6, 2002. This release is a surrender of existing rights;
it does not impose upon the Hickses an obligation to thereafter never complain of events occurring
at the Strube facility prior to August 6, 2002. The parties to the agreement negotiated its terms. 
Both parties are sophisticated, and although the agreement could have easily included language
which would have imposed upon the Hickses an obligation not to complain about past events at
Strube, no such language was included. Courts are not free to rewrite agreements to insert provisions
that parties could have included or to imply restraints for which they have not bargained. Tenneco
Inc. v. Enterprise Prods. Co., 925 S.W.2d 640, 646 (Tex. 1996). 

 Moreover, the Hickses were entitled under the agreement to object and seek to overturn the
registration. Under paragraph 2 of the 2001 Agreement (which was incorporated into the 2002
Agreement), the Hickses specifically retained the right to file such items as the motion to overturn.
The language here provides that:

 Each Protestant agrees not to file any new or additional hearing request or objection
related to the issuance of a Permit based on Pilgrim's amended application proposing
the wastewater management system using treatment and subsurface drip irrigation
described in Attachment 1. This agreement does not, however, prevent a Protestant
from 1) filing complaints to actions under the Permit 2) filing complaints to actions
in violation of the Permit or 3) filing hearing requests, objections or complaints
related to any future application by Pilgrim for renewal, amendment, or other revision
to the Permit or to any other authorization.


The third provision of this paragraph authorized the Hickses' objection to the revision of the permit.

Per the 2002 Agreement, the Hickses withdrew their request for a hearing before the TCEQ on
August 6, 2002, allowing Permit No. 04032 to be issued on September 5, 2002. In October 2002,
Pilgrim sought to amend Permit No. 04032 and convert it to a registration. The Hickses did not
object to the permit which had already been issued, but were objecting to the application for a major
amendment to the permit and to the request to transform the permit into a registration. (13) Opposition
to the registration and major amendment of the permit does not equate to opposition to the permit
as described in the settlement agreement. 

 The Hickses' June 17, 2006, letter to "neighbors" is also claimed to be a violation of the
agreement. This argument is based on the premise that the letter references complaints regarding
the Strube facility from as early as 1999, well before the signing of the 2002 Agreement. Pilgrim
further contends that this letter was an attempt to use events occurring before August 6, 2002, to
influence community members to complain about the Strube facility and to create adverse
consequences for Pilgrim. This is claimed to be an attempt to circumvent the 2002 Agreement by
enlisting surrogates to make complaints to the TCEQ when the Hickses were contractually barred
from making those complaints. The fallacy of this argument, as previously discussed, is that the
Hickses were not contractually barred from making complaints to the TCEQ of the nature they
filed. (14) Further, we note that the June 17, 2006, letter was sent approximately 939 days after Pilgrim
filed its lawsuit. Because this letter was written well after suit was filed, it could not have formed
the basis of the breach of contract claim and was not the genesis of this suit. 

 Pilgrim's final claim of breach is based on the June 19, 2003, letter to the TCEQ. This letter
makes reference to activities that occurred at the Strube facility prior to the 2002 Agreement and as
a result, is alleged by Pilgrim to violate paragraph 2.4 of the agreement. For the reasons stated 
above, we find no such violation, and further find that (as is the case with the motion to overturn and
the 2006 letter) the Hickses were entitled to write this letter pursuant to paragraph 2 of the
agreement, quoted at length herein.

IV. CONCLUSION

 Because the jury's determination that the Hickses failed to comply with the agreement is not
supported by legally sufficient evidence, it therefore cannot comport with the answer that the trial
court was obligated to give. The error in submitting Question No.1 to the jury was, therefore,
harmful based on the unsupported answer of the jury and the resulting judgment. Because we
reverse the judgment of the trial court and render judgment in favor of the Hickses, we do not
address the remaining issues, as they are moot.


 Jack Carter

 Justice


Date Submitted: September 23, 2009 

Date Decided: October 20, 2009

 

 
1. At the outset of the transactions, the State commission was named the Texas Natural
Resources Conservation Commission. During the progress of the dispute, it was named the Texas
Commission on Environmental Quality. In order to avoid confusion, we refer to this entity as the
TCEQ throughout. 
2. The amended application for permit 04032 was made in January 2002. 
3. The 2001 Agreement was incorporated into the 2002 Agreement as if fully set forth, except
as expressly modified by the 2002 Agreement. The 2002 Agreement expressly modified the 2001
Agreement by the addition of two paragraphs. (Note that the TNRCC to which reference is made
is now known as the TCEQ.) The first modification permitted Pilgrim to:

 land apply, through subsurface plow irrigation, process wastewater if such waste-water discharge has been authorized by TNRCC pursuant to an amended application
to be filed by PILGRIM and such wastewater has been treated biologically to a
sufficient level to eliminate nuisance odors. For purposes of this agreement
sufficient biological treatment shall be defined as 50 percent BOD removal or
greater. PILGRIM agrees to analyze wastewater to be applied on the 70 acres at least
once a week for BOD, record the results of the BOD analysis and maintain each
record for at least four years from the date of making the record. Such records will
be available to the HICKS for review and copying at their request. This activity is
limited to discharge by a subsurface plow irrigation system on approximately 70
acres as shown in exhibits C and D of attachment 1. The rate of application shall not
exceed (1) a maximum of 40,000 gallons per acre per day and; (2) 500,000 gallons
per acre per year. No application shall occur when soils are saturated or frozen. No
application shall occur on any land from which surface water flow would enter the
property of W.K. HICKS or J.E. HICKS.


 The second modification permitted Pilgrim to dispose of process waste or process wastewater
by land application by using a subsurface injection plow or subsurface pasture application system
similar to the injection plow, on offsite waste management units connected to Pilgrim lagoons by
pipeline, provided certain conditions were complied with in the manner of such disposal. 
4. One of the claimed errors of the commissioner is that the registration authorized Pilgrim to
dispose of waste on land management units identified in the application. The actual registration
issued provides that the 451.25 acres of on-site land and the 1,023.43 acres of off-site land may be
used for disposal of waste in addition to wastewater. 161.66 acres of the additional off-site acreage
are included in the Hickses' watershed.
5. The petition seeks to have the court declare that the Hickses breached the 2002 Agreement
in writing the June 19, 2003, letter to the TCEQ; it does not mention the motion to overturn or a
subsequent letter written by the Hickses on June 17, 2006, which Pilgrim now claims also breach
the 2002 Agreement. The motion to overturn and the 2006 letter were introduced at trial without
objection, and the Hickses do not claim waiver of these additional allegations of breach. We
therefore consider each of the documents claimed by Pilgrim to have breached the 2002 Agreement.
6. Interestingly, neither of the parties pled that the agreement was ambiguous, but both depend
on the language of the settlement agreement for their relief. 
7. Paragraph 2.11 of the 2002 Agreement provides: "PILGRIM agrees to comply with the
terms and conditions of the September 28, 2001 Settlement Agreement, which is incorporated herein
as if fully set forth, except as expressly modified by this Agreement."
8. Counsel for Pilgrim points out that both documents were introduced at trial in support of the
contention that this case involves the interpretation of two separate documents. Inasmuch as the
language of the 2001 Agreement was expressly incorporated into the 2002 Agreement, this argument
does not support Pilgrim's position.
9. The witness testimony relative to the agreement is centered on (1) what the agreement said
and (2) what actions were alleged to be a violation of the agreement. 
10. Even so, the parties' interpretations of the contract are not relevant if the meaning of the
contract is plain from its face. GTE Mobilnet v. Telecell Cellular, 955 S.W.2d 286 (Tex.
App.--Houston [1st Dist.] 1997, writ denied). An ambiguity does not exist simply because the
parties differ in their interpretations of the contract language. In re D. Wilson Constr. Co., 196
S.W.3d 774 (Tex. 2006).
11. The first is a letter written to the TCEQ by the Hickses dated June 19, 2003; the second is
a motion by the Hickses to overturn the TCEQ's executive director's decision to grant registration;
and the third is a letter written to "neighbors" by the Hickses dated June 17, 2006. 
12. The motion claims that the executive director of the TCEQ erred as a matter of law in
granting the registration because the applicant failed to comply with the commission rules
concerning certification of the application; erred as a matter of law in converting the permit to a
registration; and erred as a matter of law in authorizing Pilgrim to dispose of waste on land
management units identified in the application.
13. The Hickses argue that a registration issued by the TCEQ is subject to less oversight than
a certification.
14. Save and except any complaints relating to "the issuance of a Permit based on Pilgrim's
amended application proposing the wastewater management system using treatment and subsurface
drip irrigation described in Attachment 1."